Estate of Eli C. Walker, Deceased, Delgracia B. Walker, Eli C. Walker, Jr., and Luster M. Merriman (alias dictus L. M. Merriman) Executors v. Commissioner.
Estate of Eli C. Walker v. Commissioner
Docket No. 31850.
United States Tax Court
1954 Tax Ct. Memo LEXIS 273; 13 T.C.M. (CCH) 231; T.C.M. (RIA) 54081; March 18, 1954
*273 Decedent owned at the time of his death, July 14, 1946, certain real estate situated in Indian River County, Florida, which had on it several citrus groves which were bearing fruit. The executors of the estate in the estate tax return which they filed elected to value the property of the decedent as of one year after his death. In the return which they filed they valued the real estate owned by decedent at $192,286.60. The Commissioner in his determination of the deficiency increased this value of real estate by $119,114.40. Held, the value of all the real estate, including citrus groves, owned by decedent at the date of death, valued one year after his death, namely, July 14, 1947, was $215,965. Howe P. Cochran, Esq., Suite 510, American Building, 1317 F. Street, N. W., Washington, D.C., and *274 Margaret Luers, Esq., for the petitioners. E. M. Woolf, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in estate tax of the estate of Eli C. Walker, deceased, of $30,618.84. The deficiency is mainly due to adjustment (a) which the Commissioner made to the net estate for basic tax as disclosed by the estate tax return which was filed. This adjustment added $119,114.40 in real estate value to the value of real estate reported on the return. This adjustment (a) is explained in the deficiency notice, as follows: "(a) It is determined that the value, as of one year after date of death, of certain real estate owned by the decedent was as follows: "(a) Parcel #8, Schedule A,
Estate Tax Return 31.83
acres, with improve-
ments
$14,000.00
(b) Parcel #9, Schedule A,
Estate Tax Return 1.8
acres, with improve-
ments
9,100.00
(c) Parcel #14, Schedule A,
Estate Tax Return 3 1/2
lots, unimproved
7,000.00
(d) Parcel #18, Schedule A,
Estate Tax Return 10
acres of unimproved land
2,500.00
Citrus Grove Properties
(e) Homestead Grove, being
item 1 of Schedule A,
Estate Tax Return
Parcel #6, Schedule A,
$253,500.00"
Estate Tax Return
Parcel #7, Schedule A,
Estate Tax Return
Parcel #12, Schedule A,
Estate Tax Return
Parcel #15, Schedule A,
Estate Tax Return
Parcel #16, Schedule A,
Estate Tax Return
Parcel #17, Schedule A,
Estate Tax Return
*275 The petition contains three assignments of error, as follows: "(a) Respondent, in determining decedent's gross estate, erred in increasing the values, as of one year after date of death, of certain real estate owned by the decedent, consisting of four (4) non-grove properties and seven (7) citrus grove properties by an amount of $119,114.40 in excess of the value shown by the return. "(b) Respondent erred in determining that certain gifts aggregating an amount of $210,000.56 made by decedent during his lifetime, were includible in the gross estate. "(c) Respondent erred in failing to allow the full amount of administrative and legal expenses in that no deduction has been allowed for the legal fees and costs of this proceeding, and in failing to allow credit for inheritance, estate and other taxes, and costs in that no credit has been given for any additional taxes and costs which may grow out of this proceeding, if any there to." At the hearing petitioners abandoned assignment of error (b) and the parties have agreed that the matters covered by assignment of error (c) will be settled under Rule 50 but if the parties should be unable to agree under Rule 50, then petitioners *276 may proceed as provided under Rule 51 of the Tax Court's Rules of Practice.
Findings of Fact Eli C. Walker, deceased, (hereinafter referred to as decedent) died July 14, 1946, a resident of Indian River County, Florida. The petitioners are his executors. The estate tax return was filed with the Collector of Internal Revenue at Jacksonville, Florida, on October 13, 1947. In the estate tax return petitioners elected to value the estate as of one year after the date of death of decedent, which elected valuation date was July 14, 1947. In the estate tax return petitioners reported real estate owned by decedent at the time of his death having a total value as of July 14, 1947, of $192,286.00. The Commissioner in the deficiency notice increased the value of real estate by $199,114.40, arriving at a total for real estate valuation of $311,401. The real estate in question is situated in Indian River County, a coastal county of Florida. Some of it was planted in citrus groves and some of it was not planted in citrus fruit trees but was improved with buildings and other improvements. Some of it consisted of unimproved lots. The real estate which decedent owned at the time of his death *277 may be generally described, as follows: The "Homestead Property" consists of 160 acres, of which 125 acres are planted to grove and 35 acres are unplanted land. This property is located 3 miles west of downtown Vero Beach and is supplied with electricity and telephone service. The buildings consist of a two-story frame colonial type dwelling with four large bedrooms and bath, large open and enclosed porches, together with a garage, pump room, barn, truck shed and packing houses. There are four small tenant houses and one large tenant house with shed garages for shop and grove equipment. The property is surrounded with paved streets with a quarter of a mile frontage on Highway 60, which is the connecting link between Vero Beach and Tampa. Another parcel is located 2 miles noth of Vero Beach and consists of 40 acres of land planted to grapefruit, with artesian well and fertilizer shed. Still another parcel has approximately 115 acres but it is considered as a 111-acre grove. It is just outside of the north limits of Vero Beach. There are 30 acres of oranges, 26 acres in pink grapefruit, and 55 acres of *ar Seedless grapefruit. The buildings consist of a very old one-story frame *278 house, a frame storage barn, and two galvanized metal fertilizer sheds, together with three artesian wells. Another parcel is located immediately north of the "Homestead Property" and 3 1/2 miles west of Vero Beach. This property consists of 40 acres, of which 9 acres are Marsh Seedless grapefruit, 15 acres of pineapple oranges, a mid-season fruit, and 16 acres of Valencia oranges, a late fruit. The buildings consist of a galvanized metal shed, adjacent to which there is a roofedover shed about 8 by 14 feet. Another parcel consists of 4 acres planted to Duncan (common) grapefruit. Another parcel is located immediately south of the "Homestead Property" and contains 15 acres, of which 11 acres are planted to grove-mixed varieties, with the remaining 4 acres cleared and ready for planting. The buildings consist of an old house and galvanized metal barn. Another parcel is located immediately west of the "Homestead Property" and contains 20 acres planted to orange trees and old grapefruit, including the standard and Marsh Seedless varieties. In addition to the foregoing properties, there were some non-grove properties, as follows: One parcel containing 31.83 acres is located *279 immediately west of the Florida East Coast Railway. The improvements on this property consist of 12 rental houses renting for $2.00 per week a building. These houses are of frame weatherboard construction with galvanized metal roofs, containing either two or three rooms. Water is supplied from an artesian well. Another parcel consists of 1.8 acres located approximately 2 miles north of the business center of Vero Beach. This property is improved with a total of eight small rental houses and a small metal garage. The houses are of frame weatherboard construction, seven of which were rented at $1.50 per week and the larger building was rented for $2.00 per week. Another parcel containing 3.25 acres is located approximately 4 miles northeast of the business center of Vero Beach. Another parcel consists of 10 acres of unimproved land located about 3 1/4 miles west of the Vero Beach business center. It is immediately south and across the highway from the Walker "Homestead Property." There were about 100 citrus fruit trees on this parcel. The fair market value of all the real estate owned by decedent at the time of his death, July 14, 1946, and valued one year subsequent to his death *280 or July 14, 1947, was $215,965. This is the value which should be used in a recomputation under Rule 50, instead of the $192,286.60 used in the estate tax return which was filed and the $311,401 used by respondent in his determination of the deficiency in estate tax. Opinion BLACK, Judge: Only one issue remains for our decision and that is what was the fair market value of the real estate owned by decedent at the time of his death, July 14, 1946, as of one year after his death which was July 14, 1947. Another issue raised by petitioners in their pleadings has been abandoned. The petition also raises a question concerning the amount of, and the deduction of, attorneys' fees, administration fees, court costs, and credit for state, succession, inheritance, or estate taxes. It was agreed by the parties at the hearing that these deductions, whatever they might be, would be taken care of in a recomputation under Rule 50. If the parties cannot agree as to these deductions under Rule 50, petitioners may proceed as provided by Rule 51 of the Tax Court's Rules of Practice.
The applicable statute to the issue which we have to decide is section 811 of the Code, printed in the margin. [1] *281 The principal evidence on the question of valuation of the real estate as of one year after the date of the death of decedent was by two real estate experts, familiar with the value of Florida real estate, including citrus groves. The expert witness for petitioners was Charles Jewett, who lives at Vero Beach, Indian River County, Florida, and was familiar with the real estate in question. The expert witness for respondent was Harold *282 B. Condict, who lives in Orlando, Florida. He was not as familiar with the real estate in question as was Charles Jewett, but he, like Jewett, has had wide experience in the appraisal of Florida real estate, including citrus groves. Written appraisals made by these two witnesses were introduced in evidence by the respective parties after the witnesses had concluded their testimony. The appraisal made by Jewett was made in 1947, following the optional date of one year after decedent's death. The appraisal made by respondent's witness Condict was not made until 1953, but was made as of July 14, 1947. The valuations reached by these two expert witnesses as of July 14, 1947, were rather wide apart. The total valuation placed by Condict on the citrus grove properties, including the Homestead, was $243,500. He did not testify as to the value of the non-grove properties; he had not made an appraisal of them. The valuations reached by Jewett in his appraisal were generally the same as reported in the estate tax return which was filed by the executors of the estate. In fact, it was his appraisal of the properties as of one year after the date of the death of the decedent which the executors *283 used as the basis for the estate tax return which they filed. We have carefully read and considered the appraisals which were made by these two appraisers and which were introduced in evidence. We have also carefully considered the record of their oral testimony given at some length at the hearing in support of their respective appraisals. After considering these appraisals and the oral testimony, as well as other evidence in the record, we have concluded that the fair market value of all the real estate owned by decedent at the time of his death and valued as of one year from the date of his death, namely, July 14, 1947, was $215,965. This valuation should be used in a computation under Rule 50, instead of the $192,286.60 which was reported on the estate tax return and the $311,401 which respondent determined in his deficiency notice. Decision will be entered under Rule 50. Footnotes
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - (a) Decedent's Interest. - To the extent of the interest therein of the decedent at the time of his death; * * *
(j) Optional Valuation. - If the executor so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date one year after the decedent's death, * * *↩